UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NANCY CAPO,

    Plaintiff,

v.                                           CASE NO. 3:16-cv-167-J-34JBT

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a Period of Disability and Disability Insurance Benefits.  In a decision dated October 15, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled from February 6, 2014, the alleged onset date, through June 30, 2014, the date last insured.  (Tr. 14–24.)  Having considered the parties' memoranda and being otherwise fully advised, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

**REVERSED and REMANDED** for further administrative proceedings.

### I.     Issues on Appeal

As framed by Plaintiff, she raises the following two issues on appeal:

> I.     The [ALJ] failed to fully and fairly develop the record.
>
> II.    The ALJ failed to apply the correct legal standards to the medical opinions of record.

(Doc. 16 at 1.)

### II.    Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### III.   The ALJ's Decision

In her decision, at step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of "scoliosis, anxiety, and

depression."[2]  (Tr. 16.)  Prior to step four, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could only occasionally stoop, crouch, kneel, climb; have no exposure to concentrated vibrations or hazards; no exposure to concentrated fumes, gases, or poorly ventilated areas; required the ability to perform work from either a seated or standing position; and, she required simple, routine tasks with only occasionally [sic] exposure to the general public and only occasional tandem tasks with co-workers.

(Tr. 19.)

Based on the RFC, and the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff was unable to perform any of her past relevant work, but that jobs existed in significant numbers in the national economy that Plaintiff could have performed during the period at issue.  (Tr. 22–23.)

**IV.   Analysis**

As part of her first argument that the ALJ failed to fully and fairly develop the record, Plaintiff argues that the ALJ overlooked important medical evidence in determining her claim.  (Doc. 16 at 9.)  Although the undersigned does not agree with Plaintiff's characterization of her argument as a failure to fully and fairly develop the record, the undersigned does agree that the ALJ's decision does not allow the Court to conclude that the ALJ considered Plaintiff's medical condition as

---

[2] The sequential evaluation process is described in the ALJ's decision.  (Tr. 15–16.)

a whole. For that reason, reversal and remand is respectfully recommended. The undersigned also recommends that the Court need not address Plaintiff's second argument because the ALJ's decision and analysis may change depending on her reconsideration of the first issue.

Although there is no rigid requirement that the ALJ specifically address every piece of evidence, the Court must be able to conclude that the ALJ adequately considered a claimant's medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.") (quotations omitted). In this case, the undersigned recommends that the ALJ's decision is not sufficient for the Court to draw that conclusion.

In addressing Plaintiff's physical condition, the ALJ began her review of the medical records with the following observation:

> Records show that the claimant was involved in a motor vehicle accident on February 9, 2010, four years prior to her alleged onset date (Exhibit 1F/8). Those notes show that the claimant reported having a herniated lumbar disc and two cervical discs from a motor vehicle accident in October 2009 (Exhibit C1F/8). Despite this, her physical examination was normal and radiological studies were not performed (Exhibit C1F/9).

(Tr. 20.)

The medical records cited are emergency room records dated February 9,

4

2010 from Florida Hospital.  (Tr. 329–39.)  From these records, it appears that there was no motor vehicle accident on that date but that Plaintiff was complaining of pain in her lower extremities reportedly related to the motor vehicle accident in October 2009.  (Tr. 334, 336–37.)  This apparent mischaracterization of the record by the ALJ might not be significant.  However, as Plaintiff argues, the ALJ "made a point" of noting the absence of radiological studies on that date.  (Doc. 16 at 9.)  The ALJ made a similar point regarding emergency room records dated December 19, 2013, noting that Plaintiff had reported back pain but that "[n]o radiological studies of her back were performed."  (Tr. 21.)

After discussing the emergency room record dated February 9, 2010, the next medical entry that the ALJ discussed is dated January 17, 2013.  (Tr. 20.)  Thus, the ALJ failed to note records from a neurologist, Dr. Frank Alvarez, dated August 18, 2010 and September 8, 2010, that contain the findings of significant radiological studies, disclose an additional motor vehicle accident on June 27, 2010, and note that Plaintiff had a cervical fusion (C5-C6) in May 2010.  (Tr. 508–17.)  The radiological studies noted include an x-ray of the cervical spine on June 2, 2010, MRIs of the cervical spine dated January 19, 2010 and August 4, 2010, and an MRI of the lumbar spine dated November 18, 2009. (Tr. 515–16.)  Based in part on these studies, Dr. Alvarez's initial diagnosis on August 18, 2010 included the following:

- PMH [past medical history] of prior neck injury requiring surgery in May 2010 with no ongoing symptoms thereafter.  This would likely predispose to increased

5

- problems.

- PMH of prior MVC [motor vehicle collision] in 2009 with ongoing low back pain ever since. This would likely predispose to increased problems.

- PMH of depression and suicide attempt but under therapy now with symptoms improved.

- MRI of the cervical spine recently revealed; the C5-6 disc herniation is improved with the surgery at that level but the C3-4-5 disc herniations are still present and the C6-7 disc herniation is no longer seen.

- MRI of 11/18/09 revealed a L5-S1 disc herniation with right S1 nerve root compression.

(Tr. 516.)

Dr. Alvarez saw Plaintiff again on September 8, 2010, at which time he reviewed the results of a brain MRI and a lumbar spine MRI performed on August 20, 2010, both of which he had ordered. Regarding the lumbar spine MRI, Dr. Alvarez noted: "MRI of 11/18/09 revealed a L5-S1 disc herniation with right S1 nerve root compression. This is still present on the recent study although the prior mentioned severe foraminal stenosis is now said to be compressing the bilateral L5 nerve roots." (Tr. 511.)

Despite having made a point that on several occasions, radiological studies of Plaintiff's spine were not performed, the ALJ appeared to be unaware of the foregoing significant studies. The ALJ also never mentioned the 2010 motor vehicle accident or the neck surgery. The Commissioner argues that these prior studies and information are irrelevant given that Plaintiff's alleged onset date was

6

not until 2014. (Doc. 17 at 4–6.) However, this argument is undercut by the ALJ's own consideration of evidence prior to 2014, including the cited emergency room records from February 9, 2010. (Tr. 17, 20-21.) Moreover, although it is up to the ALJ to decide in the first instance, it appears that this evidence might tend to corroborate Plaintiff's allegations of back and neck pain, perhaps even in 2014. The undersigned recommends that this evidence was important enough, particularly given the ALJ's apparent belief that there was no significant radiological evidence, that the ALJ should have discussed it. Therefore, reversal and remand is recommended.

Plaintiff also argues that the ALJ failed to adequately address certain "medical opinions" contained in her treating records. (Doc. 16 at 1.) The Commissioner makes a number of arguments in response, including that many of these records were outside the period of consideration, that many just contain diagnoses and are not opinions regarding Plaintiff's functioning, and that the ALJ otherwise adequately considered this evidence. (Doc. 17 at 6–13.) The undersigned recommends that the Court need not address this issue because the ALJ's analysis may change on remand based on a reconsideration of the medical evidence discussed in issue one.

Accordingly, it is respectfully **RECOMMENDED** that the Court enter an order stating in substance:

"1.     The Clerk of Court is directed to enter judgment, pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's decision and

**REMANDING** with instructions to the Commissioner to: (a) adequately consider and discuss Plaintiff's medical condition as a whole; (b) address the records of Dr. Alvarez and the results of any radiological studies; (c) reconsider Plaintiff's RFC if appropriate; and (d) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is further directed to close the file.

3. Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b). Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees. *See* In re: *Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412."

**DONE AND ENTERED** at Jacksonville, Florida on September 29, 2016.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record